**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :
TAHIR MAHMOOD,                                                    :
                                                                  :
                                                                  :
                                    Plaintiff,                    :     11 Civ. 05345 (BSJ)
                                                                  :
                                                                  :     ECF CASE
                    v.                                            :
                                                                  :
                                                                  :
RESEARCH IN MOTION LTD.,                                          :     **ELECTRONICALLY FILED**
                                                                  :
                                                                  :
                                    Defendant.                    :
                                                                  :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW OF DEFENDANT RESEARCH IN MOTION LIMITED**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

ALLEN & OVERY LLP
Michael S. Feldberg
Paul B. Keller
Laura R. Hall
Reginald B. Schafer
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300
Fax: 212-610-6399

*Attorneys for Defendant*
*Research In Motion Limited*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

THE COMPLAINT ..............................................................................................................2

STANDARD OF LAW..........................................................................................................7

ARGUMENT ........................................................................................................................8

I.      PLAINTIFF'S COMMON LAW CLAIMS ARE TIME-BARRED. ...............................8

        A.      Plaintiff's Common Law Claims Accrued Upon the Application for and
                Issuance of the '694 Patent. ..................................................................................8

        B.      Plaintiff Alleges No Basis to Toll the Governing Limitations Periods. ...............11

II.     PLAINTIFF'S COMMON LAW CLAIMS FAIL TO STATE A CLAIM AND
        ARE PREEMPTED BY FEDERAL PATENT LAW. .....................................................14

III.    PLAINTIFF'S COMMON LAW CLAIMS DO NOT BELONG IN THIS
        FORUM. ..........................................................................................................................17

        A.      Plaintiff's Decision to File Suit in New York Deserves Little Deference............17

        B.      Canada and the United Kingdom Are Established Adequate Fora.......................18

        C.      The Appropriate Forum for these Claims is Canada or the United Kingdom. ......18

IV.     PLAINTIFF'S CORRECTION OF INVENTORSHIP CLAIM SHOULD BE
        DISMISSED BASED ON LACHES. ................................................................................19

        A.      A Presumption of Laches Applies. ......................................................................20

        B.      Plaintiff Pleads No Colorable Excuse for Delay..................................................20

        C.      RIM Has Been Prejudiced by Plaintiff's Unreasonable Delay.............................21

CONCLUSION....................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

Abbott Labs. v. Brennan,
  952 F.2d 1346 (Fed. Cir. 1991)..................................................................16

Abercrombie v. Andrews College,
  438 F. Supp. 2d 243 (S.D.N.Y. 2006)..........................................................13

AMS Group v. JP Morgan Chase Bank,
  No. 07 Civ. 6988 (LTS), 2008 WL 3833848 (S.D.N.Y. Aug. 15, 2008) .............. 12-13

Architectronics, Inc. v. Control Sys., Inc.,
  935 F. Supp. 425 (S.D.N.Y. 1996)...............................................................10

Ashcroft v. Iqbal,
  556 U.S. ----, 129 S. Ct. 1937 (2009) ...........................................2, 7, 8, 16

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)...............................................................................7, 8

Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,
  489 U.S. 141 (1989)...............................................................................15

Byron v. Chevrolet Motor Div. of Gen. Motors Corp.,
  No. 93 CIV. 1116 (AJP), 1995 WL 465130 (S.D.N.Y. Aug. 7, 1994)........................22

Castricone v. County of Erie,
  No. 96-CV-0372E(M), 1997 WL 584311 (W.D.N.Y. Sept. 9, 1997) .........................13

Close-Barzin ex rel. de Bekessy v. Christie's, Inc.,
  51 A.D.3d 444, 857 N.Y.S.2d 545 (1st Dep't 2008) .....................................9

Cohen v. Cohen,
  773 F. Supp. 2d 373 (S.D.N.Y. 2011).........................................................11

Coleman v. Corning Glass Works,
  619 F. Supp. 950 (W.D.N.Y. 1985)................................................19, 21, 22

Conopco, Inc. v. Campbell Soup Co.,
  95 F.3d 187 (2d Cir. 1996).......................................................................20, 21

DiFolco v. MSNBC Cable L.L.C.,
  622 F.3d 104 (2d Cir. 2010)......................................................................12

Global Fin. Corp. v. Triarc Corp.,
 93 N.Y.2d 525, 693 N.Y.S.2d 479 (1999) ...................................................8

Golden Pac. Bancorp v. FDIC,
 273 F.3d 509 (2d Cir. 2001)...........................................................................11

Gulf Oil Corp. v. Gilbert,
 330 U.S. 501 (1947)........................................................................................17

Gurvey v. Cowan, Liebowitz & Latman, PC,
 No. 06 Civ. 1202, 2009 WL 1117278 (S.D.N.Y. Apr. 24, 2009)................10

Halebian v. Berv,
 644 F.3d 122 (2d Cir. 2011).........................................................................12

Hall v. Aqua Queen Mfg., Inc.,
 93 F.3d 1548 (Fed. Cir. 1996).................................................................20, 22

Iragorri v. United Techs. Corp.,
 274 F.3d 65 (2d Cir. 2001).......................................................................17, 18

Kaufman v. Cohen,
 307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) ................................11

Lennon v. Seaman,
 63 F. Supp. 2d 428 (S.D.N.Y. 1999).......................................................8, 19

M&T Chems., Inc. v. Int'l Bus. Machs. Corp.,
 403 F. Supp. 1145 (S.D.N.Y. 1975)............................................................13

Matzan v. Eastman Kodak Co.,
 134 A.D.2d 863, 521 N.Y.S.2d 917 (4th Dep't 1987) ................................14

Mikohn Gaming Corp. v. Acres Gaming, Inc.,
 165 F.3d 891 (Fed Cir. 1998)......................................................................16

Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine,
 311 F.3d 488 (2d Cir. 2002).........................................................................19

Opals on Ice Lingerie v. BodyLines, Inc.,
 425 F. Supp. 2d 286 (E.D.N.Y. 2004) ........................................................10

Piper Aircraft Co. v. Reyno,
 454 U.S. 235 (1981)........................................................................................17

Pollux Holding Ltd. v. Chase Manhattan Bank,
 329 F.3d 64 (2d Cir. 2003).......................................................................17, 18

Portfolio Recovery Assoc., LLC v. King,
 14 N.Y.3d 410, 901 N.Y.S.2d 575 (2010) ....................................................8

Robins Island Pres. Fund, Inc. v. Southold Dev. Corp.,
 959 F.2d 409 (2d Cir. 1992)....................................................................22

Rushing v. Nexpress Solutions, Inc.,
 No. 05-CV-6243 (CJS), 2009 WL 104199 (W.D.N.Y. Jan. 14, 2009)........................14

Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,
 81 F.3d 1224 (2d Cir. 1996).....................................................................19

Sempra Energy Trading Corp. v. Algoma Steel Inc.,
 300 F.3d 242 (2d Cir. 2002).....................................................................18

Seneca Ins. Co. v. Wilcock,
 No. 01 Civ. 7620 (WHP), 2002 WL 1067828 (S.D.N.Y. May 28, 2002) ....................8

Smith v. Healy,
 744 F. Supp. 2d 1112 (D. Or. 2010) ..........................................................15

Solow Bldg. Co., LLC v. Nine West Group, Inc.,
 No. 00 Civ. 7685 (DC), 2001 WL 736794 (S.D.N.Y. June 29, 2001)........................19

Sporn v. MCA Records, Inc.,
 58 N.Y.2d 482, 462 N.Y.S.2d 413 (1983) ....................................................14

Stark v. Advanced Magnetics, Inc.,
 29 F.3d 1570 (Fed. Cir. 1994)..............................................................20, 21

Statistical Phone Philly v. NYNEX Corp.,
 116 F. Supp. 2d 468 (S.D.N.Y. 2000)......................................................11, 13

Tavory v. NTP, Inc.,
 297 F. App'x 976 (Fed. Cir. 2008) ............................................................16

Ultra-Precision Mfg., Ltd. v. Ford Motor Co.,
 411 F.3d 1369 (Fed. Cir. 2005)......................................................14, 15, 16

Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.,
 196 F.3d 1366 (Fed. Cir. 1999)................................................................14

Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso,
 87 N.Y.2d 36, 637 N.Y.S.2d 342 (1995) .....................................................8

Waner v. Ford Motor Co.,
   331 F.3d 851 (Fed. Cir. 2003)......................................................................15

## STATUTES

35 U.S.C. § 256................................................................................. 19, 20-23

35 U.S.C. § 262................................................................................. 15-16

Federal Rule of Civil Procedure 8(a) ...............................................................1

Federal Rule of Civil Procedure 12(b)(6) ....................................................1, 12

N.Y. C.P.L.R. § 202...........................................................................................8

N.Y. C.P.L.R. § 214...........................................................................................9

Defendant Research In Motion Limited ("RIM") respectfully submits this memorandum of law in support of its motion to dismiss the complaint filed August 1, 2011, pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) and on the basis of *forum non conveniens*.

## PRELIMINARY STATEMENT

Through his complaint, plaintiff Tahir Mahmood ("Mr. Mahmood"), a citizen of the United Kingdom, sets forth allegations based on facts more than fifteen years old and centered around a supposed idea he had and how certain RIM employees, located in Canada, improperly obtained it and patented it as their own. The supposed idea Mr. Mahmood claims he shared with RIM sixteen years ago, in 1995, was admittedly provided under no confidentiality agreement, and the U.S. patent identified in the complaint was issued more than ten years ago in 2001. None of the alleged facts took place in the State of New York.

Although the patent in suit and the products covered by it were matters of public record, Mr. Mahmood waited until 2004 to contact RIM and claim that he invented technology used in RIM's flagship BlackBerry products. According to Mr. Mahmood, it was not until that date that he realized the BlackBerry, first released in August 1998, was a RIM product.

In 2004, Mr. Mahmood wrote to RIM and accused it of committing fraud on the Patent Office in obtaining patents on the BlackBerry technology and demanded that RIM prove its patents did not incorporate his ideas. After an investigation of RIM's records based on the limited information provided by Mr. Mahmood, on July 16, 2004, RIM in-house counsel wrote a detailed letter to Mr. Mahmood and his counsel, setting out the reasons why his software for transmitting emails to and from pagers could not have been the basis for RIM's technology. Mr. Mahmood did not pursue his allegations against RIM.

Six years later, in July 2010, Mr. Mahmood resurfaced and reasserted his earlier claims. According to Mr. Mahmood, he decided to re-engage RIM in discussions in 2010 because, two years earlier in 2008, in the course of Mr. Mahmood liquidating his consulting business, his brother discovered certain relevant documents in the attic of the family garage.

Mr. Mahmood, however, did not contact RIM when the documents were allegedly discovered, but instead moved to Dubai to pursue business opportunities. Following the failure of Dubai's economy in 2009, Mr. Mahmood returned to England. He waited another year, and then contacted RIM through counsel in July 2010. His counsel's July 2010 letter failed to convince RIM of the merits of the asserted claims. Another year later, plaintiff filed this lawsuit.

Because all of Mr. Mahmood's claims are untimely and because his common law claims, to the extent they even belong in this Court, fail to state a claim, this action should be dismissed.

## THE COMPLAINT

RIM's summary of the complaint below incorporates plaintiff's allegations for the purposes of this motion, and should not be taken as an admission of those allegations in any way. See Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949 (2009).

**Development of PageMail**

According to the complaint,[1] PageMail software was the result of a collaboration between plaintiff and RAM Mobile Data UK ("RAM")[2] to create a program that would permit users of RAM's network to send and receive email on their pagers. Compl. ¶¶ 20-24. Following meetings in the United Kingdom between plaintiff and RAM employees Jeremy Button and

---

[1] A copy of the complaint and accompanying exhibits are attached as Exhibit A to the Declaration of Michael S. Feldberg ("Feldberg Decl.").

[2] Despite similar names, RAM has no corporate affiliation with RIM.

Peter Philip (id. ¶ 20), on February 26, 1995, RAM provided plaintiff with a specification for "Synectics to develop a two-way InfoTAC pager gateway." Id. Ex. 5 (Letter) and Ex. 6 (Initial Project Specification). Synectics (U.K.), Ltd. was a company founded by plaintiff for independent consulting on email projects; it was renamed Synentia Corporation and later dissolved. Id. ¶¶ 13, 118-20. Plaintiff does not allege that Synectics' collaboration with RAM was subject to any confidentiality or non-disclosure agreement.

Plaintiff alleges that he created a software program meeting RAM's specification, later named PageMail (id. ¶ 24), which ran on an email server and, using an individual's login credentials, requested emails from the server and forwarded them to the individual's pager (id. ¶ 25). The software also allegedly permitted an individual to select a pre-defined response message on the pager, which was received by the software at the email server, combined with the original email and sent out as a reply. Id. ¶¶ 27-31, Exs. 1 and 6. RAM apparently promoted the PageMail product by creating a brochure and certifying it for use on RAM's network, but the results of a focus group convinced RAM and plaintiff to "put the PageMail project on hold until a more suitable handheld device could be located or developed." Id. ¶¶ 33-36, Ex. 7.

**PageMail and RIM**

Around April 1995, RAM allegedly introduced Mr. Mahmood to Don McMurtry, a marketing manager at RIM. Id. ¶ 38. Mr. McMurtry suggested that PageMail could incorporate RAD-I/O software, developed by RIM to translate computer files into data packets that could be sent over RAM's network, but plaintiff selected a competing program. Id. ¶¶ 39-40. When RIM released updated RAD-I/O tools, Mr. McMurtry contacted plaintiff and offered to provide him with the RIM software. Id. ¶ 45, Ex. 12.

Plaintiff alleges that, on May 1, 1995, he provided Mr. McMurtry with information about PageMail, including an updated version of the product specification, which "included a complete description of Mr. Mahmood's PageMail invention." Id. ¶¶ 41, 43; Exs. 1 & 11. The PageMail specification is dated May 23, 1995 (Ex. 1 at 1), more than three weeks after the fax cover page plaintiff alleges accompanied the information (Ex. 11), and bears the following copyright notice:

> © 1995 RAM Mobile Data Ltd. All rights reserved. Please direct comments to:
>
> Peter Philip
> RAM Mobile Data UK
> Tel: (+44) 0181-990-9090
> Internet: philip@ram.co.uk

Ex. 1 at 5. Plaintiff does not allege that he provided Mr. McMurtry or any other RIM employee with the PageMail software itself, but rather alleges on "information and belief" that RAM provided the software to RIM. Compl. ¶ 46. The basis for this belief is not disclosed. At the time plaintiff allegedly provided the PageMail specification to RIM, he did not have a non-disclosure agreement with RIM, but alleges that the "confidential" relationship between RAM and RIM "covered" him. Id. ¶ 42. He then alleges that he later signed a confidentiality agreement provided by RIM (id.), but does not indicate when the agreement was provided or signed, does not attach any such agreement to his complaint, and does not describe its terms.

Mr. McMurtry introduced plaintiff to potential customers for his products, including Philip Tan of ST Mobile Data in Singapore. Id. ¶ 47. On December 8, 1995, Mr. Tan sent a fax to plaintiff, copying Mr. McMurtry, in which he expressed interest in Synectics' "pagemail products for MSMail, Cc:Mail, ISP, etc.," which he understood to "provide seamless internet access." Id. ¶¶ 47-48, Ex. 13. According to the complaint, this fax demonstrates Mr. Tan's interest in "Mr. Mahmood's transparent push email solution," and that interest allegedly

excited Mr. McMurtry.  Id. ¶ 49.  Based on RIM's small size in 1995 and Mr. McMurtry's "senior position and responsibilities," plaintiff alleges, upon information and belief, that Mr. McMurtry shared this excitement, and the PageMail Specification, with all of RIM's employees, including CEO Mihal Lazaridis and engineer Gary Mousseau.  Id. ¶¶ 49, 55-57.  Plaintiff further alleges, again on information and belief, that therefore "Mihal Lazaridis and Gary Mousseau[] knew of PageMail, PageMail's specifications and operation, and considered and built upon what they knew in their development of wireless, email software solutions, including the invention claimed in the '694 patent."  Id. ¶ 57.

Despite this allegedly widespread enthusiasm for the PageMail project, in April 1996 plaintiff declared it "as good as dead" because he could not identify an acceptable handheld device to use with it.  Id. ¶ 53.  Plaintiff does not allege that he ever sought patent protection for his alleged invention.

**RIM's '694 Patent and the BlackBerry**

In 1995 and 1996, plaintiff alleges that RIM was focused on developing two-way pagers, but the RIM 900 Inter@active Pager, released in September 1996, was unsuccessful.  Id. ¶¶ 49, 53, 58-59, 62-64.  As a result, plaintiff alleges that RIM's interest in the 1995 PageMail software was renewed, but it was not for another three years, until 1998, that Mr. Lazaridis and Mr. Mousseau discovered the solution that plaintiff allegedly had provided to them.  Id. ¶¶ 65, 98-99.

On May 29, 1998, Mr. Lazaridis and Mr. Mousseau filed a U.S. patent application that matured into U.S. Patent No. 6,219,694, "System and Method for Pushing Information from a Host System to a Mobile Data Communications Device Having a Shared Electronic Address" (the "'694 patent"), which was assigned to RIM.  Id. ¶¶ 69, 78.  RIM did not inform plaintiff that

it would be filing this patent application, which plaintiff alleges "disclos[ed] and claim[ed] subject matter that Mr. Mahmood had conceived of and developed on his own, and communicated to RIM." Id. ¶ 73. Mr. Lazaridis and Mr. Mousseau filed inventorship oaths declaring that they were the sole inventors of the subject matter of the '694 patent. Id. ¶¶ 74-75.

In August 1998, RIM released the RIM 950, later renamed the BlackBerry, which incorporated the transparent, push email invention disclosed in the '694 patent. Id. ¶¶ 79-80. The '694 patent issued on April 17, 2001 and RIM publicized the issuance and the '694 patent's importance to the BlackBerry product shortly thereafter. Id. ¶¶ 76, 86-87. Plaintiff alleges that the PageMail software "meets each limitation of at least the first claim of the '694 patent" (id. ¶ 101), but does not claim that he invented everything disclosed in the patent's 36 claims.

**Plaintiff Claims RIM's BlackBerry Uses His Invention**

Plaintiff alleges that, notwithstanding the release of the RIM 950 in August 1998, the launch of that device under the BlackBerry name in January 1999, and RIM's publicity surrounding the 2001 issuance of the '694 patent, it was not until February 18, 2004 that he discovered that RIM was the manufacturer of the BlackBerry device he claims contained his invention. Id. ¶¶ 79, 80, 86-87, 104-05. On February 18, 2004, plaintiff called Mr. Lazaridis and left a voicemail in which he claimed inventorship of certain aspects of the BlackBerry. Id. ¶ 105. On May 14, 2004, RIM held a conference call with plaintiff to discuss his allegations. Id. ¶¶ 108-09. Subsequently, on July 16, 2004, RIM attorney Sandra Draibye wrote to plaintiff, copying his counsel Richard Gallafent (Ex. 20 at 5), to summarize RIM's investigation of his claims and set forth reasons why RIM did not believe it had misappropriated his ideas or trade secrets. Compl. ¶¶ 110, 112; Ex. 20. Plaintiff alleges that this letter misled him in some unspecified way and mischaracterized the PageMail product. Id. ¶ 113. He further alleges that

this letter shows that "Mihal Lazaridis and Gary Mousseau, had a comprehensive understanding of Mr. Mahmood's PageMail's [*sic*] technology and considered it in the work leading up to the development of the '694 patent claimed invention and the BlackBerry." Id. ¶ 115.

Despite plaintiff's current allegation that the 2004 letter supports his inventorship claim, he did not contact RIM again for another six years. Id. ¶¶ 118, 123. Plaintiff alleges that his six-year delay was due to an inability to locate his records relating to PageMail, which were discovered in the garage of his family's home in 2008, and due to ignorance about remedies available under U.S. patent law. Id. ¶¶ 119, 121-22. On July 30, 2010, plaintiff's counsel contacted RIM by letter, asserting his inventorship claim and, on November 18, 2010, RIM counsel responded, indicating that it would consider the issue closed unless plaintiff responded further. Id. ¶¶ 123-24. On August 1, 2011, the complaint was filed with this Court.

## STANDARD OF LAW

To survive a motion to dismiss, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Adjudication of a motion to dismiss requires a two-step analysis. See Iqbal, 129 S.Ct. at 1949-50. First, the court must identify the complaint's conclusory allegations, which are not entitled to a presumption of truth. See id. Second, the court must consider whether the remaining, well-pleaded, non-conclusory, factual allegations create a "reasonable inference that the defendant is liable for the misconduct alleged." See id. at 1949. The plausibility determination requires the court, drawing on its "judicial experience and common sense," to determine whether the complaint's factual allegations nudge the claim "across the line from conceivable to plausible." Id. at 1950-51. Allegations that are "'merely consistent with'" a

defendant's liability, or that raise a "sheer possibility" that a defendant has acted unlawfully, are

not sufficient.  See id. at 1949 (quoting Twombly, 550 U.S. at 556-57).

## ARGUMENT

**I.  PLAINTIFF'S COMMON LAW CLAIMS ARE TIME-BARRED.**

Because plaintiff is a citizen and resident of the United Kingdom (Compl. ¶ 10),

his claims are barred unless they are "timely under the limitation periods of both New York and

the jurisdiction where the cause of action accrued."  Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d

525, 528, 693 N.Y.S.2d 479, 480 (1999) (emphasis added); N.Y. C.P.L.R. § 202.  Because

plaintiff's common law claims are untimely under the applicable New York statutes of

limitations, they should be dismissed.[3]

**A.  Plaintiff's Common Law Claims Accrued Upon the Application for and Issuance of the '694 Patent.**

1.  Conversion

A claim for conversion under New York law has a three-year statute of limitations

and accrues upon the act of conversion, "regardless of when the conversion is discovered."

Seneca Ins. Co. v. Wilcock, No. 01 Civ. 7620 (WHP), 2002 WL 1067828, at *6 (S.D.N.Y. May

28, 2002) (quoting Lennon v. Seaman, 63 F. Supp. 2d 428, 440 (S.D.N.Y. 1999)); Vigilant Ins.

Co. of Am. v. Hous. Auth. of City of El Paso, 87 N.Y.2d 36, 44-45, 637 N.Y.S.2d 342, 347

(1995) (finding discovery rule inapplicable to conversion claim).  Where, as here, a plaintiff

---

[3]     Although none of the allegations on which plaintiff's claims are based show any contact
by himself, Synectics, RIM or the named inventors of the '694 patent with the State of New
York, RIM accepts plaintiff's choice of law for purposes of this motion only, even though claims
alleging economic injury, like plaintiff's here, generally are deemed to accrue "where the
plaintiff resides and sustains the economic impact of the loss," that is, at plaintiff's residence in
the United Kingdom.  Portfolio Recovery Assoc., LLC v. King, 14 N.Y.3d 410, 416, 901
N.Y.S.2d 575 (2010) (quoting Global Fin. Corp., 93 N.Y.2d at 529).

alleges that the conversion was in "willful disregard" of his rights (Compl. ¶ 139), a demand for return of the property allegedly converted is not a prerequisite to accrual. See, e.g., Close-Barzin ex rel. de Bekessy v. Christie's, Inc., 51 A.D.3d 444, 444, 857 N.Y.S.2d 545, 546 (1st Dep't 2008) ("Given plaintiff's allegation that defendants knowingly consigned and sold her property, a demand and refusal was not a prerequisite to commencement of an action for conversion . . . and plaintiff's reliance on [the demand rule] is misplaced.") (citations omitted).[4]

The act of conversion alleged here is obtaining a patent on an idea to which plaintiff claims to have contributed. Compl. ¶ 138 ("Defendant RIM has converted for its own use and advantage[] the invention that is the subject matter of the '694 patent to the exclusion of Mr. Mahmood's rights."). Any cause of action for conversion of plaintiff's idea accrued on April 17, 2001, when the '694 patent was issued and assigned to RIM, and the statute of limitations expired three years later, on April 17, 2004.

## 2. Unfair competition

A cause of action for unfair competition is subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214. Plaintiff claims that RIM has somehow unfairly competed with him by not identifying him as the inventor of the subject matter of the '694 patent. Compl. ¶ 142 ("Defendant RIM has made false and misleading representations in the marketplace regarding the inventorship of the '694 patent . . . ."). In the absence of any pleading identifying the alleged misrepresentations, RIM is left to guess the representation on which plaintiff bases his claim. If plaintiff bases his claim on RIM's press release about the issuance of the '694

---

[4]     Even if measured from demand, plaintiff's conversion claim would be untimely; he confronted RIM about the purported conversion on February 18, 2004. Compl. ¶¶ 104-10.

patent, which was published shortly after the patent issued in April 2001 (id. ¶ 86), the unfair competition claim was barred as of April 2004.

Plaintiff's unfair competition claim is also untimely to the extent it is based on RIM obtaining the '694 patent without identifying him as an inventor. Compl. ¶ 143 ("Defendant RIM never informed Mr. Mahmood that RIM would be filing a patent application that disclosed and claimed subject matter that he conceived of and reduced to practice."). Where an unfair competition claim is based on misappropriation of an idea, and defendant publicizes the idea in the marketplace, the cause of action accrues upon disclosure. See Gurvey v. Cowan, Liebowitz & Latman, PC, No. 06 Civ. 1202, 2009 WL 1117278, at *2 (S.D.N.Y. Apr. 24, 2009) (Jones, J.) ("If a defendant misappropriates and discloses a trade secret, he becomes liable to plaintiff upon disclosure. On the other hand, if the defendant keeps the secret confidential, yet makes use of it to his own commercial advantage, each successive use constitutes a new, actionable tort for the purpose of the running of the Statute of Limitations.") (quoting Architectronics, Inc. v. Control Sys., Inc., 935 F. Supp. 425, 433 (S.D.N.Y.1996)); Opals on Ice Lingerie v. BodyLines, Inc., 425 F. Supp. 2d 286, 296-97 (E.D.N.Y. 2004) (where misappropriation alleged is more akin to "conversion" than "infringement," doctrine of continuing tort does not apply). The '694 patent is a public document that describes the invention plaintiff now claims to be his own and that also attributes the development of that invention to Mr. Lazaridis and Mr. Mousseau. Thus, whether based on a theory of false advertising or a theory of misappropriation of an idea, plaintiff's claim for unfair competition has been time-barred since April 2004.

3. <u>Unjust enrichment</u>

An unjust enrichment claim is generally subject to a six-year statute of limitations, accruing "upon the occurrence of the wrongful act giving rise to a duty of restitution," not upon discovery of that act. <u>Cohen v. Cohen</u>, 773 F. Supp. 2d 373, 396-97 (S.D.N.Y. 2011) (quoting <u>Golden Pac. Bancorp v. FDIC</u>, 273 F.3d 509, 520 (2d Cir. 2001)). According to plaintiff, that wrongful act was either the filing of the patent application naming only Mr. Lazaridis and Mr. Mousseau on May 29, 1998, or the assignment of the '694 patent to RIM alone upon issuance on April 17, 2001. Compl. ¶ 148. The statute of limitations therefore expired on April 17, 2007, at the latest. <u>See</u> <u>Kaufman v. Cohen</u>, 307 A.D.2d 113, 127, 760 N.Y.S.2d 157, 171 (1st Dep't 2003) (noting dispute over whether three-year or six-year statute of limitations applies to unjust enrichment claims).

**B. Plaintiff Alleges No Basis to Toll the Governing Limitations Periods.**

Given the clarity of how the application of the relevant statutes of limitation bars Mr. Mahmood's claims, it is presumed that he likely will argue that the statute of limitations should be tolled. Any such arguments would be meritless.

Under limited circumstances, New York recognizes that the statute of limitations may be tolled by fraudulent concealment or equitable estoppel. Both require a showing that the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action. <u>See</u> <u>Statistical Phone Philly v. NYNEX Corp.</u>, 116 F. Supp. 2d 468, 483 (S.D.N.Y. 2000), <u>aff'd</u>, 14 F. App'x 111 (2d Cir. 2001). Plaintiff, however, has pled no facts that meet this standard.

<u>First</u>, although alleging otherwise (Compl. ¶¶ 111-13), plaintiff has known of the existence of RIM's patent since at least 2004 when, in the course of his communications with

RIM, he accused RIM of obtaining it by fraud.  While Mr. Mahmood alleges that he did not

know of any patent issues associated with his idea because RIM's July 16, 2004 letter did "not

mention the '694 patent nor does it address the inventorship of that patent" (id. ¶¶ 111, 113), Mr.

Mahmood failed to attach his own communications to RIM, to which RIM's July 16, 2004 letter

responded (id. Ex. 20 at 1).  These emails demonstrate Mr. Mahmood's awareness of RIM's

patents and the advice of his counsel, Richard Gallafent, about his potential patent claims.  See

May 16, 2004 Email from T. Mahmood to S. Draibye (email chain attached as Exhibit B to the

Declaration of Michael S. Feldberg) ("Richard tells me that the implications of fraud against the

patent office is not something anyone does.  I feel at this point we need to be absolutely certain

our product[']s features are not part of your patents . . . .").[5]

> This omitted email demonstrates that Mr. Mahmood's allegation that RIM failed

to inform him of the existence of the '694 patent during their communications in 2004 is not

true—he could not have been ignorant of the patent because he was referencing it in

correspondence in which his patent counsel, Mr. Gallafent, is "cc'd".  This email also further

undermines any claim by plaintiff that he expected RIM to provide him with additional

information on the '694 patent, as well as renders implausible his allegation that he "was not

familiar with United States patent law and the potential remedies available to him under United

States law" until he again retained counsel in 2009.  Compl. ¶¶ 121-22.  Furthermore, any

credence given to plaintiff's allegations of ignorance is insufficient for tolling purposes.  AMS

---

[5]     The Court may consider this document on a motion to dismiss because plaintiff makes
allegations about his communications with RIM, cannot be surprised by the content of his own
correspondence, and attached RIM's letter responding to this email as Exhibit 20 to the
complaint.  See Halebian v. Berv, 644 F.3d 122, 130 n.7 (2d Cir. 2011) ("[I]t is well established
that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may
also rely upon 'documents attached to the complaint as exhibits[ ] and documents incorporated
by reference in the complaint.'") (quoting DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111
(2d Cir. 2010)).

Group v. JP Morgan Chase Bank, No. 07 Civ. 6988(LTS)(HBP), 2008 WL 3833848, at *4 (S.D.N.Y. Aug. 15, 2008), aff'd, 371 F. App'x 149 (2d Cir. 2010) ("[P]roffered ignorance of the law is not a sufficient basis for tolling the statute of limitations.") (citations omitted).

Second, the '694 patent, on which all of plaintiff's claims are based, has been publicly available since April 17, 2001. See M&T Chems., Inc. v. Int'l Bus. Machs. Corp., 403 F. Supp. 1145, 1148 n.4 (S.D.N.Y. 1975), aff'd, 542 F.2d 1165 (2d Cir. 1976) ("Issuance of a patent and recordation in the Patent Office constitutes notice to the world of its existence. . . .") (citation omitted). Thus, plaintiff's allegations that RIM did not tell him it would be filing for a patent (Compl. ¶¶ 73, 143) cannot establish any concealment after the date the patent was issued. Even assuming arguendo that the letter were misleading or inaccurate, plaintiff could not establish that it would have been reasonable for him to rely on a statement by RIM, with which he had had no contact since April 1996, about a matter of public record. See Abercrombie v. Andrews College, 438 F. Supp. 2d 243, 267 (S.D.N.Y. 2006) (holding that plaintiff could not plead due diligence to support equitable estoppel claim where alleged misrepresentation concerned information available in publicly recorded deed).

Third, plaintiff's assertion that he was "[u]nable to locate his records regarding his work with RAM and RIM" until late 2008 (Compl. ¶¶ 118-19) is irrelevant to tolling of the governing limitation period. See Statistical Phone Philly, 116 F. Supp. 2d at 478 ("The fact that plaintiffs may not have known all the facts giving rise to their claims is of no consequence; that is why parties engage in discovery."); Castricone v. County of Erie, No. 96-CV-0372E(M), 1997 WL 584311, at *2 (W.D.N.Y. Sept. 9, 1997), aff'd, 159 F.3d 1345 (2d Cir. 1998) (declining to apply equitable tolling where plaintiff contended that "the limitations period should be deemed to have commenced . . . when she 'discovered' the new evidence.").

Because plaintiff can advance no credible or legally sufficient argument for the tolling of the statute of limitations, and the statute of limitations on all of his common law claims had expired by April 17, 2007 at the latest, those claims are untimely and should be dismissed.

## II. PLAINTIFF'S COMMON LAW CLAIMS FAIL TO STATE A CLAIM AND ARE PREEMPTED BY FEDERAL PATENT LAW.

Plaintiff's claims for conversion, unfair competition and unjust enrichment rest on allegations that the freely-disclosed PageMail specification and software (Compl. ¶¶ 41-42, 46) were "built upon" by Mr. Lazaridis and Mr. Mousseau "in their development of . . . the invention claimed in the '694 patent" (id. ¶ 57), from which Mr. Mahmood concludes he "is the legal owner of the invention that is the subject matter of the '694 patent" (id. ¶ 134) and that RIM converted his idea (Count Two),[6] unfairly competed with him (Count Three) and was unjustly enriched (Count Four) by failing to name him as an inventor. Because each claim depends on plaintiff being a joint or sole inventor of the '694 patent and because "the field of federal patent law preempts any state law that purports to define rights based on inventorship," the common law claims are entangled with, and preempted by, federal patent law. Univ. of Colo. Found., Inc. v. Am. Cyanamid Co., 196 F.3d 1366, 1372 (Fed. Cir. 1999).

Plaintiff's claims are in conflict with and are preempted by federal patent law, given that plaintiff seeks to recover damages under state law for RIM's alleged use of an unpatented and freely-disclosed idea. See Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 411

---

[6]     Plaintiff's conversion claim also fails as a matter of New York law because an intangible idea cannot be the subject of a conversion action. See Rushing v. Nexpress Solutions, Inc., No. 05-CV-6243 CJS, 2009 WL 104199, at *6 (W.D.N.Y. Jan. 14, 2009); Matzan v. Eastman Kodak Co., 134 A.D.2d 863, 864, 521 N.Y.S.2d 917, 918 (4th Dep't 1987) ("There is no protected interest in an idea, but only in the tangible expression or implementation of that idea. It thus cannot be the subject of conversion."). Because intellectual property rights are also intangible, Sporn v. MCA Records, Inc., 58 N.Y.2d 482, 489, 462 N.Y.S.2d 413, 416 (1983), a conversion claim cannot lie for plaintiff's alleged "immediate superior right of possession of the '694 patent." Compl. ¶ 135.

F.3d 1369, 1380-81 (Fed. Cir. 2005) (State law claims are preempted where they "frustrate[]

Congress's objective of 'creating an incentive to develop inventions that meet the rigorous

requirements of patentability'" by permitting "a would-be inventor . . . to secure a perpetual

patent-like royalty under state law based on the use of an unpatented idea.") (quoting <u>Bonito

Boats, Inc. v. Thunder Craft Boats, Inc.</u>, 489 U.S. 141, 160-63 (1989)); <u>Waner v. Ford Motor

Co.</u>, 331 F.3d 851, 856 (Fed. Cir. 2003) ("Absent secrecy, state law cannot create a collateral set

of rights available as an adjunct or expansion to patent rights.").  State law may not offer "patent-

like protection" to inventions not protected by federal patent law, <u>Bonito Boats</u>, 489 U.S. at 156,

and claims for conversion and unjust enrichment have been held to be preempted when premised

on the use of unpatented ideas.  <u>See</u> <u>Smith v. Healy</u>, 744 F. Supp. 2d 1112, 1129-30 (D. Or.

2010) (denying as futile proposed claim for conversion of "intangible idea" because it was

preempted by patent law); <u>Ultra-Precision</u>, 411 F.3d at 1381 (affirming dismissal of unjust

enrichment claim where plaintiffs "freely disclosed information to Ford without attempting to

negotiate terms for payment of any kind").

   Plaintiff's claim for unjust enrichment is also preempted to the extent it rests on a

theory of joint inventorship,[7] because 35 U.S.C. § 262 provides that, "[i]n the absence of any

agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or

sell the patented invention . . . without the consent of and without accounting to the other

owners."  Thus, even if plaintiff had been named as an inventor, he would not have been entitled

to share in the benefits RIM derived from the patent, and state law cannot provide him with a

---

[7]  Despite plaintiff's passing reference to being "at least an inventor, if not the sole inventor" (Compl. ¶ 128), he does not allege that he conceived of each limitation of each of the claims in the '694 patent, nor that Mr. Lazaridis and Mr. Mousseau made no inventive contribution.  <u>See</u> <u>id.</u> ¶ 57 ("Mihal Lazaridis and Gary Mousseau . . . <u>built upon</u> what they knew [of PageMail] in their development of . . . the invention claimed in the '694 patent.") (emphasis added).

remedy federal law denies. See Ultra-Precision, 411 F.3d at 1381 (citing 35 U.S.C. § 262 and dismissing unjust enrichment claim where plaintiffs sought to be named as co-inventors); Tavory v. NTP, Inc., 297 F. App'x 976 (Fed. Cir. 2008) ("[Plaintiff] cannot sidestep § 262 through a state law unjust enrichment claim; such a claim is preempted . . . .").

Plaintiff alleges that RIM unfairly competed with him by making "false and misleading representations in the marketplace regarding the inventorship of the '694 patent" (Compl. ¶ 142), but does not identify a single misrepresentation, and the 2001 press release quoted in the complaint (¶¶ 86-87) makes no assertions about inventorship. Plaintiff also does not allege how any such representations could have caused him a "loss of financial proceeds and/or commercial benefits and advantages" (id. ¶ 144), given that he had abandoned any effort to commercialize his claimed invention five years prior to the issuance of the '694 patent (id. ¶ 53), and he never sought patent protection. His conclusory allegations of misrepresentations and injury are entitled to no weight on a motion to dismiss and, in the absence of well-pled facts, he cannot state a plausible claim for unfair competition. See Iqbal, 129 S.Ct. at 1949-50.

Even if RIM had publicized the naming of Mr. Lazaridis and Mr. Mousseau as inventors, such a statement would have been an accurate description of the patent as issued, barring a claim for unfair competition. A cause of action for unfair competition based on assertion of patent rights requires that a patentee's statements be made in bad faith, and "bad faith is not supported when the information is objectively accurate." See Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 897 (Fed Cir. 1998). Moreover, to the extent plaintiff's claim is based on representations made to the Patent Office in the course of obtaining the '694 patent, it is preempted by the patent law's regulation of conduct before the Patent Office. See Abbott Labs. v. Brennan, 952 F.2d 1346, 1354-57 (Fed. Cir. 1991).

**III.    PLAINTIFF'S COMMON LAW CLAIMS DO NOT
        BELONG IN THIS FORUM.**

As shown above, plaintiff's common law claims should be dismissed because they are barred by the statute of limitations and preempted by federal patent law, as they are derivative and duplicative of his correction of inventorship claim. However, if plaintiff were to attempt to avoid preemption by claiming that his common law claims do not depend on his correction of inventorship claim, they would plainly not belong in this Court—or, for that matter, any U.S. court—under the doctrine of *forum non conveniens*.

The doctrine of *forum non conveniens* permits a court to "resist imposition upon its jurisdiction" where the convenience of the parties and interests of justice favor trial in another forum. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947). In determining whether to dismiss on the basis of *forum non conveniens*, courts consider three factors: (i) the appropriate level of deference to be given to the plaintiff's choice of forum; (ii) the availability of an adequate alternative forum; and (iii) private and public interest factors. Id. at 508-09; Iragorri v. United Techs. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc). Each of these factors points decisively towards dismissal of plaintiff's common law claims in favor of Canada or the United Kingdom, because plaintiff's claims are based on allegedly tortious acts in Canada by a Canadian entity and its Canadian employees relating to a U.K. citizen and owner of a U.K. company.

**A.    Plaintiff's Decision to File Suit in New York Deserves
       Little Deference.**

The presumption usually accorded to a plaintiff's choice of forum is severely diminished because Mr. Mahmood has strategically chosen not to sue in his home forum. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981); Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 71 (2d Cir. 2003) ("[W]hen a foreign plaintiff sues in a United States forum

such choice is entitled to less deference . . . . [I]t is more likely that forum-shopping for a higher damage award or for some other litigation advantage was the motivation for plaintiff's selection."). Plaintiff has plainly not selected New York based on convenience—as this dispute centers on transactions, witnesses and evidence located abroad—further lessening any deference to his tactical choice of a New York forum. See Iragorri, 274 F.3d at 72.

**B.     Canada and the United Kingdom Are Established Adequate Fora.**

"An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Pollux, 329 F.3d at 75 (citations omitted). RIM is amenable to service of process in Canada and the United Kingdom, the two fora in which the events discussed in the complaint allegedly occurred, and there can be no doubt they are adequate to hear disputes of this nature. See id. at 74-77 (affirming *forum non conveniens* dismissal in favor of English courts); Sempra Energy Trading Corp. v. Algoma Steel Inc., 300 F.3d 242 (2d Cir. 2002) (affirming *forum non conveniens* dismissal in favor of Canadian courts).

**C.     The Appropriate Forum for these Claims is Canada or the United Kingdom.**

The balance of the private and public factors also decisively point to Canada or the United Kingdom as the most appropriate forum for plaintiff's common law claims.

With respect to private factors, nearly all witnesses with first-hand knowledge of the complaint's allegations reside in Canada, including various former employees of RIM who are not subject to the control of either party and whose testimony can only be compelled in the United States by letters of requests to Canadian courts, a costly and time-consuming process. Because Canada is RIM's principal place of business and where relevant documents are located, the expense and burden to RIM of participating in discovery and trial would be substantially less

18

in a Canadian forum, while plaintiff would face no additional burden and would benefit from greater convenience in a U.K. forum. These considerations demonstrate that the private factors weigh heavily in favor of Canada or the U.K. See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1232-33 (2d Cir. 1996).

   With respect to public factors, this case is focused on the alleged acts of a Canadian business in its home country. By bringing this action in New York, plaintiff attempts to substitute New York's law in place of Canada's legal framework concerning business conducted within its borders. Additionally, as RIM holds patent rights under Canadian law for the technology at issue in this litigation, the local interests of a Canadian court and Canadian factfinders are paramount and weigh in favor of dismissal. See Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine, 311 F.3d 488, 500 (2d Cir. 2002).

## IV. PLAINTIFF'S CORRECTION OF INVENTORSHIP CLAIM SHOULD BE DISMISSED BASED ON LACHES.

   Dismissal based on laches may be granted at the motion to dismiss stage where "laches is clear on the face of plaintiff's Complaint." Solow Bldg. Co., LLC v. Nine West Group, Inc., No. 00 Civ. 7685(DC), 2001 WL 736794, at *3 (S.D.N.Y. June 29, 2001), aff'd, 48 F. App'x 15 (2d Cir. 2002) (quoting Lennon v. Seaman, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999)) (granting defendant's motion to dismiss where the plaintiff was aware of defendant's use of intellectual property for years, but inexcusably delayed commencement of legal proceedings to the defendant's detriment). The essential elements of a laches defense are unreasonable delay by the plaintiff and resulting harm or prejudice to the defendant, Coleman v. Corning Glass Works, 619 F. Supp. 950, 953 (W.D.N.Y. 1985), aff'd, 818 F.2d 874 (Fed. Cir. 1987), both of which are plainly established by plaintiff's own allegations. Plaintiff's claim for correction of inventorship under 35 U.S.C. § 256 should, therefore, be dismissed.

## A. A Presumption of Laches Applies.

Although no statute of limitations applies to correction of inventorship claims, a court may find that plaintiff was obligated to act diligently to pursue such a claim. See <u>Stark v. Advanced Magnetics, Inc.</u>, 29 F.3d 1570, 1575 (Fed. Cir. 1994). The laches period for a federal cause of action lacking a prescribed statute of limitations is based on the analogous state statute of limitations. See <u>Conopco, Inc. v. Campbell Soup Co.</u>, 95 F.3d 187, 191 (2d Cir. 1996) ("[O]nce the analogous statute has run, a presumption of laches will apply and plaintiff must show why the laches defense ought not be applied in the case."). Plaintiff's state law claims suggest that the analogous statute of limitations should be either three years (conversion and unfair competition) or six years (unjust enrichment), commencing no later than April 17, 2001. See <u>Stark</u>, 29 F.3d at 1576 ("[T]he general rule is that the laches period does not accrue until [a] patent issues."). RIM's publicizing of its patent (Compl. ¶¶ 86-87) also supports the running of the laches period from this date. See <u>Hall v. Aqua Queen Mfg., Inc.</u>, 93 F.3d 1548, 1552-53 (Fed. Cir. 1996) (concluding that because defendants' "pervasive, open and notorious activities" put plaintiff on notice of the "allegedly infringing activities six or more years prior to the filing of suit, [defendants were] entitled to the benefit of a presumption of unreasonable delay and prejudice, the two critical factual predicates for the application of the equitable bar of laches"). Thus, the presumption of laches attached to plaintiff's Section 256 claim no later than April 17, 2007.

## B. Plaintiff Pleads No Colorable Excuse for Delay.

Plaintiff's complaint fails to present any legally cognizable justification for his delay in bringing this lawsuit, particularly where he claimed inventorship of the subject matter of the '694 patent more than seven years before bringing suit, in his July 2004 email to RIM. See Feldberg Decl. Ex. B.

Plaintiff's claim that he was ignorant of US patent law until 2009—in addition to being demonstrably false—cannot rebut the presumption of laches. See Coleman, 619 F. Supp. at 953 (finding infringement claim barred by laches where, "[e]ven if Dr. Coleman did not know whether the Corvac was technically an 'infringement' in July, 1975, he knew all the facts concerning the Corvac project, and that he had somehow been wronged.").

Even assuming arguendo that RIM had somehow misled Mr. Mahmood in 2004 about the issuance of the '694 patent in 2001, "[i]n deciding whether it was reasonable for [a putative inventor] to have believed any false or misleading representations made to him without independent inquiry, it is relevant to determine whether there was a relationship of trust between the parties, for in such case independent inquiry would be more likely to be forestalled by falsehood than if the relationship were remote." Stark, 29 F.3d at 1576 (noting such a relationship of trust may have existed where "[t]he record describes a scientific and consulting relationship . . . of several years' duration"). The complaint demonstrates that RIM had no business relationship with Mr. Mahmood between 1996 and 2004, let alone one which would justify plaintiff's reliance on RIM's representations regarding a matter of public record. Moreover, the fact that plaintiff retained legal counsel to represent him in his communications with RIM in 2004 confirms that his relationship with RIM was adversarial. See Feldberg Decl. Ex. B.

## C. RIM Has Been Prejudiced by Plaintiff's Unreasonable Delay.

A defendant is prejudiced "when the assertion of a claim available some time ago would be inequitable in light of the delay," and, more specifically, "when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." Conopco, 95 F.3d at 192 (internal citations and quotation marks omitted) (finding delay

prejudicial where defendant invested significantly in marketing campaign belatedly attacked by plaintiff). Where, as here, a plaintiff is unable "to show a legally cognizable excuse for his nearly seven year delay, defendants here need only show a 'little prejudice' in order to prevail on a laches defense." Byron v. Chevrolet Motor Div. of Gen. Motors Corp., No. 93 CIV. 1116 (AJP), 1995 WL 465130, at *8 (S.D.N.Y. Aug. 7, 1994) (citation omitted).

Prejudice to RIM by plaintiff's delay is both presumed as a matter of law following the running of the laches period, see Hall, 93 F.3d at 1552, and evident from the face of the complaint. Plaintiff alleges that RIM "receives and continues to receive payments, financial proceeds, and other commercial benefits and advantages" (Compl. ¶ 125) from the '694 patent, and has pending patent applications relating to the '694 patent (id. ¶ 85). This investment in and financial success deriving from the '694 patent "is itself the kind of prejudice which will support the defense of laches." Coleman, 619 F. Supp. at 955.[8] Moreover, plaintiff's own inability to locate relevant documents and records for over four years (Compl. ¶¶ 109, 119) highlights the prejudice that is caused by unreasonable delay. Key witnesses likely will have little recollection of events that allegedly occurred over 15 years ago and may be unavailable to testify, impeding RIM's defense against plaintiff's claims. See, e.g., Robins Island Pres. Fund, Inc. v. Southold Dev. Corp., 959 F.2d 409, 424 (2d Cir. 1992) ("A defendant may suffer prejudice . . . because the delay makes it difficult to garner evidence to vindicate his or her rights."). Because plaintiff has unreasonably slept on his alleged rights, and because significant

---

[8] In July 2004, Plaintiff informed RIM that he "needed to look at all other alternatives," and, instead of pursuing his claims against RIM, he would be "offering the technology and the all material . . . to the highest bidder . . . ." Feldberg Decl. Ex. B. Plaintiff then waited until July 2010 to notify RIM of his intent to revive his inventorship claim (Compl. ¶ 123), thereby causing further prejudice to RIM. See Coleman, 619 F. Supp. at 954 (finding delay prejudicial where plaintiff failed to provide "[p]rompt notification of his intention to sue").

prejudice to RIM's business and to its conduct of this litigation is evident, plaintiff's claim for

correction of inventorship under Section 256 should be barred by laches.

<u>CONCLUSION</u>

For all of the foregoing reasons, defendant Research In Motion Limited

respectfully requests that the Court grant its motion to dismiss the complaint with prejudice and

without leave to replead.

Dated: New York, New York
      September 22, 2011

Respectfully submitted,

ALLEN & OVERY LLP

By:  <u>/s/ Michael S. Feldberg</u>
     Michael S. Feldberg
     Paul B. Keller
     Laura R. Hall
     Reginald B. Schafer
     1221 Avenue of the Americas
     New York, New York 10020
     Tel:  (212) 610-6300
     Fax:  (212) 610-6399
     michael.feldberg@allenovery.com
     paul.keller@allenovery.com
     laura.hall@allenovery.com
     reggie.schafer@allenovery.com

*Attorneys for Defendant*
*Research In Motion Limited*