UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

TAHIR MAHMOOD,                        :        11 Civ. 5345 (KBF)

                    Plaintiff,     :

       -v-                 :        MEMORANDUM OPINION
                                                    & ORDER

RESEARCH IN MOTION LTD.,              :

                    Defendant.     :

------------------------------------------X

KATHERINE B. FORREST, District Judge:

    Plaintiff Tahir Mahmood filed this case on August 1, 2011.
The complaint asserts a claim for correction of inventorship
relating to a patent owned by defendant Research in Motion Ltd.
("RIM") for RIM's iconic Blackberry email application (Count I),
and state law claims for conversion, unfair competition and
unjust enrichment (Counts II-IV). On September 22, 2011,
defendant moved to dismiss all counts based on statute of
limitations and pre-emption as to the state law claims, laches
as to the inventorship claim and forum non-conveniens. (Dkt Nos.
11-12.) On December 16, 2011, this Court notified the parties
that it would convert the motion to one for summary judgment and
provided the parties with an opportunity to submit additional
materials. (Dkt No. 20.) Both parties subsequently made factual
submissions. (Dkt Nos. 22-33.) Plaintiff also moved for

discovery pursuant to Federal Rule of Civil Procedure 56(d).
(Dkt. No. 24.)

For the reasons set forth below, summary judgment is
GRANTED on the basis of statute of limitations as to the state
law claims (Counts II-IV), DENIED as to the inventorship claim
(Count I) and DENIED as to forum non conveniens. Plaintiff's
motion for discovery pursuant to Rule 56(d) is DENIED.

BACKGROUND

Most lawyers and indeed most judges know what a
"Blackberry" is. To some it is a timesaving lifesaver—to others,
it has eliminated the ability to "get away" and led to email-
addiction. Plaintiff claims that he is an inventor, perhaps even
the sole inventor (Compl. ¶ 128), of a significant patent
(referred to as the '694 patent) owned by RIM and that plaintiff
alleges reads on every Blackberry device with email
capabilities. (Id. ¶ 81.) Count I of the complaint is to correct
the inventorship on the '694 patent. (Id. ¶¶ 127-32.)
Plaintiff's state law claims seek damages relating to defendant
RIM's alleged taking, use and exploitation of plaintiff's
technology. (Id. ¶¶ 133-51.)

The parties do not dispute that, in 1995, plaintiff and an
employee of RIM communicated regarding a software solution that

2

plaintiff had developed for email called "PageMail." (See e.g., Id. ¶¶ 38-53; Def.'s Resp. to Pl.'s Mot. for Leave to File a Resp. to Def.'s Dec. 16, 2011 Letter Submission at 2.) It is also undisputed that plaintiff provided RIM with technical materials relating to his PageMail technology at that time. (Compl. ¶ 43; Def.'s Resp. to Pl.'s Mot. for Leave to File a Resp. to Def.'s Dec. 16, 2011 Letter Submission at 2.) There is also no dispute that by 1996, plaintiff and the RIM employee were no longer communicating regarding PageMail and plaintiff pursued other business opportunities. RIM introduced its first email device (the RIM 950) in 1998. (Compl. ¶ 79.) The RIM 950 was rebranded and launched as the Blackberry in 1999. (Id. ¶ 80.) Since then, RIM has introduced additional versions of the Blackberry. (See Keller Decl. Ex. B, Dec. 16, 2011.) In 2001, Blackberry devices carried the RIM logo. (Id.)

Plaintiff claims that until 2004 he had no idea that RIM might have inappropriately used his PageMail technology in connection with the Blackberry email application. (Compl. ¶ 104.) He alleges in his complaint and in the declaration he submitted in opposition to this motion that until 2004 he was unaware that RIM owned Blackberry. (See id.; Mahmood Decl. ¶ 50.) Neither the complaint nor plaintiff Mahmood's declaration describe what occurred in 2004 that alerted plaintiff to the

3

relationship between RIM and Blackberry. In fact, the assertion
of a 2004 epiphany is flatly contradicted by the evidentiary
record which contains (1) a 2001 snapshot of a website of a
company plaintiff owned in which plaintiff touts RIM's use of
his technology with its Blackberry device as a credential.
(Butler Aff. Ex, A),[1] and (2) the combined facts that plaintiff
concedes he was aware of the existence of the Blackberry device
prior to 2004 (see Pl.'s Resp. to Def.'s Dec. 16, 2011 Letter
Submission at 1) and that photographs of Blackberry devices
available to the public in 2001 bore the RIM logo (Keller Decl.
Ex. B, Dec. 16, 2011).

      In the face of this evidence, plaintiff instead alleges,
without explanation, that only upon learning for the first time
in 2004 that RIM in fact owned Blackberry, a light bulb went off
and he put two and two together realizing that RIM might have
used his technology in its connection with its Blackberry email
application. It is undisputed that plaintiff contacted RIM in
April 2004 to discuss his concerns. (Compl. ¶¶ 105-10.)
According to plaintiff, as he was preparing for his first
teleconference with RIM in 2004 on this topic, he discovered

_____

[1] Notably, in connection with this motion plaintiff does not
dispute that this website snapshot is accurate. (Pl.'s Resp. to
Def.'s Dec. 16, 2011 Letter Submission.)

that RIM had obtained patent '694 on the Blackberry email invention. (Mahmood Decl. ¶ 52.) He concedes that he read "parts" of the patent at that time. (Id.) Emails that he wrote to RIM employees in 2004 also refer to his review of "patents." (Feldberg Decl. Ex. B.) However, when RIM responded to his concerns by disputing his claim and requesting that he provide some factual basis for it (id.), he claims he began to doubt the validity and strength of his claim, (Mahmood Decl. ¶¶ 53-58; Compl. ¶¶ 109-10). According to plaintiff, RIM's failure to immediately embrace his assertion combined with his inability to find supporting documentation, caused him to do nothing regarding this issue for four years; the complaint casually refers to this 2004 event that is the lynchpin of stopping the clock for plaintiff as, "[u]nable to locate his records regarding his work with RAM and RIM, Mr. Mahmood focused on his consulting business and his company Synentia (formerly Synectics)." (Compl. ¶ 118.)

Then, in 2008, plaintiff asserts that he inadvertently discovered materials supportive of his claim in a box in his brother's garage. (Id. ¶ 119.) Still, plaintiff did nothing until he returned from Dubai in late 2009 when he got in touch with counsel. (Id. ¶ 121.) Counsel waited until July 2010 to contact RIM. (Id. ¶ 123.) Plaintiff clearly felt no urgency.

5

There may be interesting complexities to the question of whether plaintiff in fact played any role, a significant role or the sole role, in the invention set forth in the '694 patent. But the parties and this Court should only pursue exploration of that question if plaintiff's claims have been timely brought. The issue of timeliness is a threshold issue for this Court. Valdez ex rel. Donely v. United States, 518 F.3d 173, 181 (2d Cir. 2008).

As discussed below, plaintiff's state law claims are governed by three and six-year statutes of limitations, but more than six years has elapsed between when plaintiff's claims accrued and this action. While plaintiff has strenuously argued that equitable tolling should apply, that is, "stopping the clock" between 2004 and 2008, the record does not support a genuine issue of material fact on this issue.

The inventorship claim is not governed by a statute of limitations but is instead subject to the equitable doctrine of laches. This Court finds that while a presumption of laches applies here, defendant has proffered facts to rebut that presumption, and in so doing has raised a genuine issue of material fact as to whether defendant RIM has been prejudiced by the delay. See e.g. Black Diamond Sportswear, Inc. v. Black

6

Diamond Equipment, Ltd., No. 06 Civ. 3508, 2007 WL 2914452, at
*3 (2d Cir. Oct. 5, 2007).

STANDARD OF REVIEW

In the submissions with respect to defendant's original
motion to dismiss, defendant RIM filed material outside the four
corners of the complaint. (See e.g., Feldberg Decl. Ex. B.) To
insure that all parties had an opportunity to place before the
Court any facts they believed relevant to the decision on the
questions of laches and equitable tolling, this Court converted
the motion brought under Federal Rules of Civil Procedure 8 and
12(b)(6) to one for summary judgment. (Dkt No. 20.)

Summary judgment may not be granted unless all of the
submissions taken together "show[] that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a); see El
Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).
The moving party bears the burden of demonstrating the absence
of a material factual question, and in making this
determination, this Court must view all facts in the light most
favorable to the non-moving party. Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986); El Sayed, 627 F.3d at 933. When the moving
party has asserted facts showing that the non-movant's claims

cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot "merely rest on the allegations or denials" contained in the pleadings. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). That is, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

A self-serving declaration by plaintiff executed in connection with this motion but flatly contradicted by the contemporary evidentiary record, does not create a genuine dispute with regard to a material fact. See e.g., Scott v. Harris, 550 U.S. 372, 380 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable person could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

THE STATE LAW CLAIMS

Plaintiff does not dispute that there are applicable statutes of limitations with regard to each of his three state law claims. (Compare, Mem. of Law of Def. in Supp. of its Mot. to Dismiss the Compl. ("Def.'s Mem.") at 8-11 with Pl.'s Mem. of

8

Law in Opp. to Def.'s Mot. to Dismiss the Compl. ("Pl.'s Mem. in Opp.") at 20-21.) In its original motion to dismiss, defendant asserts that claims for conversion and unfair competition must be brought within three years and that a claim for unjust enrichment must be brought within six years of the date upon which the claim accrued. (Def.'s Mem. at 8-11.) Plaintiff does not propose different statutes of limitations and the case law is supportive of defendant's timeframes. See e.g., Daisley v. FedEx Ground Package Sys., Inc., 376 Fed. Appx. 80, 81 (2d Cir. 2010) ("The New York statute of limtiations is . . . three years for conversion.") (citing N.Y. C.P.L.R. § 213(2)); Norbrook Laboratories Ltd. v. G.C. Hanford Mfg. Co., 126 Fed. Appx. 507, 508 (2d Cir. 2005) ("The statute of limitations for an unfair competition claim based on misappropriation of another's labors or expenditures is three years.") Cohen v. Cohen, 773 F. Supp.2d 373, 397 (S.D.N.Y. 2011)("Under New York law, the statute of limitations in New York for claims for unjust enrichment . . . is generally six years."; "unjust enrichment claim is not subject to the discovery rule").

All three of plaintiff's state law claims are based on the assertion that defendant RIM misused plaintiff's PageMail technology. Count II for conversion alleges that the technology was wrongfully taken, and Counts III and IV allege that

defendant's use and exploitation resulted in unfair competition and unjust enrichment. The baseline for measuring the commencement of the statute of limitations is when plaintiff's claims accrued. Whether measured from 2001 or 2004, it is plain that the three-year statute of limitations for conversion ran in either 2004 or 2007; and the statute of limitations for unfair competition and unjust enrichment ran in either 2007 or 2010. None of the state law claims had a live statute of limitations when this action was filed in August 2011.

There is uncontradicted evidence in the record that in December 2001, plaintiff's company touted as a credential for "Projects/Systems" that it had "Designed and developed a two-way wireless messaging product that worked over a Mobitex network (analogous to GPRS) using a handheld device called an Infotac. This product was further developed by RIM (Research in Motion) with a handheld device called 'Blackberry.'" (Butler Decl. Ex. A.)[2] It is undisputed that the '694 patent issued in April 2001 —

---

[2] Plaintiff asserts that this website snapshot is "not authenticated". (Pl.'s Resp. to Def.'s Dec. 16, 2011 Letter Submission.) This ignores the affidavit of Christopher Butler, the Office Manager of the Internet Archive that created the service that captured the website snapshot. (Butler Aff. ¶ 1.) Butler states that the snapshot of the website containing the quoted language is a true and correct copy of that website archived on that date. (Id. ¶ 6.) Plaintiff does not dispute the accuracy of the snapshot. In particular, plaintiff does not

several months prior to the date of this website page. Thus, by 2001, plaintiff knew, should have known, or was at the very least on inquiry notice of a claim relating to his technology and the RIM/Blackberry technology. Even if we put this aside, however, in 2004, it is clear that plaintiff knew about RIM's ownership of Blackberry, the potential for overlap between that technology and his own, and that he was communicating with RIM about RIM's patents regarding that technology. (See e.g. Compl. ¶¶ 104-24; Mahmood Decl. ¶¶ 50-58; Feldberg Decl. Ex. B.) No reasonable juror could conclude that by 2004 plaintiff did not know or should not have known, or at least should not have been on inquiry notice of, his claim regarding RIM's potential use of his technology. As a result, the statute of limitations for each of plaintiff's state law claims had run before this action was filed.

EQUITABLE TOLLING DOES NOT APPLY

To survive dismissal of his state law claims on the grounds of statute of limitations, plaintiff must be able to raise a genuine and material issue of fact with regard to equitable tolling. The case law is clear that equitable tolling of a

---

respond to or dispute that in December 2001, several months after the issuance of the '694 patent, his company touted RIM's use of his technology for the Blackberry.

11

statute of limitations is a "rare remedy to be applied in unusual circumstances." Wallace v. Kato, 549 U.S. 384, 396 (2007); see also Smalldone v. Senkowski, 273 F.3d 133 (2d Cir. 2001). "To merit application of equitable tolling, the petitioner must demonstrate that he acted with 'reasonable diligence' during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances 'beyond his control' prevented successful filing during that time." Smaldone, 273 F.3d at 138. There is no genuine issue of material fact regarding any such exceptional circumstances here.

Equitable tolling provides that a court may exercise its discretion to allow an otherwise untimely action to proceed when conduct by one party induces another party to postpone bringing a suit on a known cause of action. Abercrombie v. Andrews College, 438 F.Supp.2d 243, 265 (S.D.N.Y. 2006). Put another way, a key aspect of equitable tolling is affirmative conduct by the adverse party that is the primary reason why the claimant failed to pursue his claims in a timely fashion. Id.

Thus, to make out a basis for equitable tolling to avoid summary judgment, plaintiff here must raise a genuine issue of material fact that (1) defendant RIM engaged in conduct which amounted to a false representation or concealment of material facts; (2) that defendant RIM did so with the intention that

such conduct would be acted upon by the plaintiff; and (3) that defendant RIM had knowledge of the real facts. Id. In addition, plaintiff must also raise a genuine issue of material fact regarding his: lack of knowledge of the true facts, reliance upon RIM's conduct, and a prejudicial change in his position. Id.

Here, plaintiff has not raised a genuine issue of material fact as to any of these elements. The core of plaintiff's equitable tolling claim is his assertion that in 2004, when he communicated with RIM regarding his concerns and he was told that he would need factual support for his claims and that there might be "innocent scenarios", he both doubted the strength and validity of his claims, and also knew that he did not then have access to documentary evidence supportive of his position. (Mahmood Decl. ¶¶ 53-58.) These facts fall far short of actions by defendant RIM that could, as a matter of law, be found to have "induced" plaintiff to forego or cease exploration of a known claim. First, the December 2001 snapshot from the website of his company directly connects RIM, Blackberry and his technology. (Butler Aff. Ex. A.) There is no assertion that RIM did anything in 2001 that prevented plaintiff from inquiring further into his claims at that time. But then plaintiff himself concedes that when he was communicating with RIM in 2004, he had

13

read "parts of" the '694 patent. (Mahmood Decl. ¶ 50.) He had also raised with RIM his concerns that they had misused his technology. (Compl. ¶¶ 104-17; Mahmood Decl. ¶¶ 51-58). It is not plausible that RIM's denial of plaintiff's assertion and its routine and expected request for additional factual support can amount to conduct that "induced" him to forego his right to bring an action. If this were the case, every time a potential claimant is told "we do not agree; show us proof", he could "stop the clock" with regard to accrual of a disputed claim. This raises disputation of a claim upon which a plaintiff might or might not ultimately prevail, to the level of an inducing, affirmative misrepresentation. That would be a poor principle and is fortunately not the law.

The law with regard to equitable tolling is clear that the doctrine is to be "invoked sparingly and only under exceptional circumstances." Abercrombie, 438 F. Supp. 2d at 265 (quoting Matter of Gross v. New York City Health and Hosps. Corp., 505 N.Y.S.2d 678, 679 (N.Y. App. Div. 1986)). Invoking it here would certainly not be mindful of either of those principles — and indeed would open the floodgates to a frequent assertion of equitable tolling in similar circumstances.

In addition, it cannot be the case that the discovery in 2008 of the box in his brother's garage can be what reasonably

14

"starts the clock." Far from suggesting that the documentary
materials supportive of his claim regarding the '694 patent were
not available in 2004, a seemingly simple search for documents
in connection with a separate business issue (the reorganization
of one of plaintiff's businesses) led to a speedy discovery of
the documents. (Compl. ¶¶ 119-20.) There is nothing in the
record to suggest that had plaintiff simply asked his brother to
look for documents in 2004, at a time when he knew RIM was
connected with Blackberry and he had connected Blackberry with
his technology (see Butler Aff. Ex. A), at a time when he was
communicating with RIM regarding his potential claim (Mahmood
Decl. ¶¶ 51-58), had already read parts of the '694 patent (id.
¶ 52), and knew he needed to locate documentary evidence (id. ¶
58), he could not have located such easily accessible documents
then. To a reasonable person, these circumstances lead
inexorably to the conclusion that RIM did not prevent plaintiff
from exploring his claim — RIM undertook no "inducement" towards
plaintiff; plaintiff bears sole responsibility for the delay.
Plaintiff failed to undertake the due diligence the law requires
when one knows of, or has a duty of inquiry, with respect to a
potential claim.

    Accordingly, there is no genuine issue of material fact as
to any element for equitable tolling. The statute of limitations

15

regarding plaintiff's conversion claim ran in 2004 if 2001 is used as the base year (which is reasonable), or 2007 if 2004 is used as the base year; the statute of limitations ran for the unfair competition and unjust enrichment claims in 2007 or 2010, depending on the base year. Generously, then, plaintiff's state law claims were untimely as of 2007 and 2010. His delay is not excusable.[3]

Because this Court finds that plaintiff's state law claims are untimely, it declines to reach the remaining argument as to whether they are preempted (Def.'s Br. at 14-16) or otherwise fail to state a claim (id. at 16).

Plaintiff's sole remaining cause of action relates to inventorship. There is no statutory imposition of a time bar for this claim. Case law has imposed a rebuttable presumption of laches when six years has elapsed between the time a claimant knew or should have known, or been on inquiry notice of, his claim. Here, a presumption of laches applies because using either 2001 or 2004 as the base year nevertheless results in more than six years passing before this action was commenced.

---

[3] Plaintiff and defendant entered into a tolling agreement on June 14, 2011. (Feldberg Supplemental Decl. Ex. A.) However, all claims had become untimely at least by 2010 (and more likely by 2007) and this tolling agreement cannot save them.

However, that presumption is rebuttable and there is a genuine issue of material fact as to whether RIM would be prejudiced if this action is allowed to proceed.

LACHES

Laches is unacceptable neglect or delay in bringing suit which causes prejudice to the other party. A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028-29 (Fed. Cir. 1992). While it is true that barring an action on the basis of laches means "that some potentially meritorious demands will not be entertained" there is "justice too in an end to conflict and in the quiet of peace." A.C. Aukerman, 960 F.2d at 1029 (quoting Envtl Def. Fund v. Alexander, 614 F.2d 474 (5th Cir.), cert. denied, 449 U.S. 919 (1980).

Laches consists of two elements: "(1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and (2) the delay operated to the prejudice or injury of the defendant." A.C. Aukerman, 960 F.2d at 1032. As an equitable doctrine, laches should not be applied mechanically. Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946). Rather, a court should take into consideration the facts and circumstances of the case at hand and weigh the equities of

17

the parties. A.C. Aukerman, 960 F.2d at 1032. In connection with an inventorship claim, the period of delay commences when the purported inventor has actual or constructive notice of a patent application that omitted him as inventor or incorrectly included persons on an application, or that such an application is forthcoming. Bd. Of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys. Inc., 583 F.3d 832, 847-48 (Fed. Cir. 2009); Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1162 (Fed. Cir. 1993) ("This knew-or-should-have-known criterion is appropriate to actions to correct inventorship."; "Absent actual knowledge, the facts must support a duty of inquiry."). In the case before this Court, the period of delay is measured from when plaintiff Mahmood knew or should have known – or was on inquiry notice that would have led him to such knowledge – that RIM had sought patents relating to the Blackberry email application.

Delay in bringing suit is, standing alone, not enough to support a laches defense. Advanced Cardiovascular Sys., Inc., 988 F.2d at 1161 ("The mere passage of time does not constitute laches.") Both factual premises of laches—i.e., delay and prejudice—must be met. Id.

A delay of more than six years "after the omitted inventor knew or should have known of the issuance of the patent will

18

produce a rebuttable presumption of laches." Advanced
Cardiovascular Sys. 988 F.2d at 1163. With the presumption, the
facts of unreasonable delay and prejudice must be inferred,
absent rebuttal evidence. A.C. Aukerman, 960 F.2d at 1037.
However, a presumption "is not merely rebuttable but completely
vanishes upon the introduction of evidence sufficient to support
a finding of the nonexistence of the presumed fact." Id.

Here, for the same reasons discussed above, which lead to
the conclusion that there is no genuine issue of material fact
regarding the reasonableness for delay with respect to equitable
tolling, there is similarly no genuine issue with regard to that
same element in a laches claim. The presumption of laches is
therefore not rebutted with regard to that element. However,
there is a genuine issue of fact with regard to whether
defendant RIM will be prejudiced as a result of allowing the
inventorship claim to proceed.

Defendant argues that, if the inventorship claim is not
dismissed, the "investment in and financial success deriving
from the '694 patent" is itself economic prejudice and the
inability to locate documents and possibility that witnesses may
have "little recollection" of the events alleged would result in
evidentiary prejudice. (Def.'s Br. at 21-23.)

First, plaintiff rebuts the presumption of economic prejudice that defendant would face, asserting that "[m]ere investments and costs" related to the Blackberry—which plaintiff argues would have happened even if his claim was brought earlier—are not enough. (Pl.'s Br. at 10-11.) This Court agrees. The law is clear that merely asserting that damages would be incurred upon a finding of liability is insufficient to support economic prejudice for purposes of laches. Serdarevic v. Advanced Med. Optics, Inc., No. 06 Civ. 7107(DLC), 2007 WL 2774177, at *5 (S.D.N.Y. Sept. 25, 2007) ("This concept [of economic prejudice] addresses something more than the damages that may be awarded for a finding of infringement.")

Defendant RIM has not raised what could be a persuasive argument in support of economic prejudice: that had RIM known of plaintiff's intent to pursue his claims earlier, it could have designed around the '694 patent. Designing around the solution might have altered various commercial and economic relationships and prevented investment in a technology potentially clouded by plaintiff's assertions.

Second, plaintiff also rebuts the presumption of evidentiary prejudice, arguing that defendant does not point to any specific witnesses that can not testify or documentary evidence that has been destroyed. (Pl.'s Br. at 11.) There is a

20

genuine issue of material fact as to whether the evidentiary record has worsened to the point that the truth of plaintiff's inventorship claim cannot be determined due to the passage of time. The record contains emails demonstrating that there was certain information relating to plaintiff's PageMail technology shared with defendant, some of the paper trail regarding those disclosures exists and can be evaluated. Moreover, plaintiff claims that he now has the source code for his PageMail solution and this can be compared to the source code for various products that include the '694 invention. (Mahmood Decl. ¶ 67.) Similarly, the floppy disks plaintiff possesses may answer some of the evidentiary questions. In short, there is a sufficient evidentiary record available that does not depend solely on unassisted human recollection that there is a genuine issue of fact as to whether the passage of time has in fact prejudiced defendant in this regard. No doubt defendant would prefer not to have to litigate this claim after the passage of so much time – but the law clearly provides that the passage of time is not alone enough to forfeit a claim. There must also be prejuduice.

Accordingly, summary judgment on timeliness is DENIED as to the inventorship claim (Count I).

THE MOTION FOR DISCOVERY

Following the adage that the best defense is a good offense, plaintiff responds to the possibility of summary judgment with a motion for discovery pursuant to Federal Rule of Civil Procedure 56(d). Such a motion is unavailing. As already described, this Court only grants summary judgment as to timeliness of the state law claims. It does not grant it as to inventorship. Thus, there is no need for discovery with regard to the inventorship claim for purposes of opposing this motion.

With respect to the state law claims, the only issue that could be the subject of discovery would be the element of reasonableness of delay regarding equitable tolling. Here, as the Court has described, the facts as set forth, agreed to or not disputed by plaintiff, make it clear that he bears the responsibility of his own delay. His assertion that RIM's denial of his claim and request for support is not an argument that needs further development to be made. He has made the argument and it is insufficient as a matter of law. This Court is not required to delay summary judgment when pursuit of the discovery sought would not assist the court or the parties with regard to the motion at hand. See e.g., Kashfi v. Phibro-Salomon, Inc., 628 F. Supp. 727, 735 n.10 (S.D.N.Y. 1986) (where court can not ascertain any meritorious benefit to further discovery,

precluding summary judgment would be senseless).   There is undoubtedly a variety of merits discovery that both parties will need to undertake with regard to the inventorship claim. But the ultimate determination of that claim, even in plaintiff's favor, will not revive his state law claims.

FORUM NON CONVENIENS

Granting a motion to dismiss on the basis of forum non-conveniens is within the sound discretion of this Court. Iragorri v. United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001). Among the factors that a court weighs in making its determination are: what degree of deference to accord the plaintiff's choice, whether the alternative forum is adequate to adjudicate the dispute and, finally, what public and private interests are implicated in the choice of forum. Id. at 72-74.

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). Here, the sole remaining claim relates to the inventorship of a U.S. patent. Such a claim must be brought in a U.S. court. Voda v. Cordis Corp., 476 F.3d 887, 903 (Fed. Cir. 2007). That is dispositive of this argument.

CONCLUSION

For the reasons set forth above, summary judgment is DENIED as to Count I, and GRANTED as to Counts II-IV. Counts II-IV are DISMISSED with prejudice. This action shall proceed solely with respect to Count I. The parties are directed to confer on a schedule for discovery and to submit a proposed schedule to the Court no later than February 6, 2012.

SO ORDERED.

Dated:     New York, New York
           January 23, 2012

                              _____
                              K. B. Forrest

                              KATHERINE B. FORREST

                          United States District Judge